UNITED STATES of America,
Plaintiff—Appellee,

v.

Norberto REVELES–ESPINOZA,
Defendant—Appellant.

No. 05–50905.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 20, 2006.

Submission Withdrawn Feb. 2, 2007.

Resubmitted Oct. 12, 2007.

Filed Oct. 19, 2007.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Jonathan I. Shapiro, Esq., Office of the U.S. Attorney, San Diego, CA, for Plaintiff-Appellee.

---

* The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

Marisa L. Dersey, Esq., Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: FISHER and CALLAHAN Circuit Judges, and COLLINS, District Judge.*

### MEMORANDUM **

Norberto Reveles–Espinoza was convicted under 8 U.S.C. § 1326. He appeals his conviction, arguing that the deportation underlying his conviction was improper because: (1) the immigration judge failed to advise him he was eligible for cancellation of removal and (2) he received insufficient notice of the asserted basis for his deportation.

### I. Reveles–Espinoza's State Conviction

Because Reveles–Espinoza moved to dismiss his § 1326 indictment based on an alleged due process defect in his underlying deportation proceeding, we review the court's failure to dismiss de novo. *See United States v. Ubaldo–Figueroa,* 364 F.3d 1042, 1047 (9th Cir.2004). We also review de novo whether Reveles–Espinoza's state conviction was an aggravated felony within the meaning of federal law, which would render him ineligible for cancellation of removal. *See Parrilla v. Gonzales,* 414 F.3d 1038, 1041 (9th Cir.2005).

If Reveles–Espinoza's conviction under California Health and Safety Code § 11358 is an "aggravated felony" within the meaning of 8 U.S.C. § 1229b, he was not eligible

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

for cancellation of removal and his deportation was proper. *See* 8 U.S.C. § 1229b(a). "'Aggravated felony' means ... illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act ..." 18 U.S.C. § 924. "[A] state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *See Lopez v. Gonzales,* 549 U.S. ——, 127 S.Ct. 625, 633, 166 L.Ed.2d 462 (2006).

■ Here, we conclude that Reveles–Espinoza's conviction was punishable as a felony under the Controlled Substance Act. Under federal law, the manufacture of marijuana may be punished by up to five years' imprisonment and is therefore a felony. *See* 21 U.S.C. § 841(b)(1)(D). "The term 'manufacture' means the production ... or processing of a drug," 21 U.S.C. § 802(15), and "[t]he term 'production' includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance," *see* 21 U.S.C. § 802(22). California Health and Safety Code § 11358 criminalizes "plant[ing], cultivat[ing], harvest[ing], dr[ying], or process[ing] any marijuana."

The only aspect of the California statute not criminalized by the Controlled Substances Act is drying marijuana. Even assuming, without deciding, that California's prohibition on drying marijuana renders the statute categorically overbroad under *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the modified categorical approach reveals that Reveles–Espinoza's conviction was in fact for a crime that meets the federal definition of the "manufacture" of

marijuana. *See Shepard v. United States,* 544 U.S. 13, 20–21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *see also Parrilla v. Gonzales,* 414 F.3d 1038, 1043 (9th Cir. 2005). The information stating the count to which Reveles–Espinoza eventually pled guilty alleged he did "plant, cultivate, harvest, dry, and process marijuana." When a defendant pleads guilty to allegations in the conjunctive, each factual allegation is taken as true for the purposes of the modified categorical approach. *United States v. Williams,* 47 F.3d 993, 995 (9th Cir. 1995). Thus, Reveles–Espinoza admitted guilt of several activities clearly within the ambit of the federal felony of the manufacture of marijuana.

Nor does Reveles–Espinoza's conviction fall outside the federal definition of a felony because of the possibility that he was convicted under California's theory of aiding and abetting liability. Reveles–Espinoza is correct that aiding and abetting liability is implicit in every California information and that we therefore have no way to determine whether he was convicted due to aiding and abetting under California law. *See* Cal.Penal Code § 971. Reveles–Espinoza does not, however, contest that those convicted due to federal aiding and abetting liability are punishable as principals. *See* 18 U.S.C. § 2(a). Instead, he argues that California imposes aiding and abetting liability more broadly than does the federal government because California extends an aider and abettor's liability to the "natural and probable consequences" of the crime originally aided and abetted.

However, in *Gonzales v. Duenas–Alvarez,* 549 U.S. ——, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007), the Supreme Court held that California's aiding and abetting liability—including its "natural and probable consequences doctrine"—is not "alone" sufficient to "show that the [California

458

theft] statute covers a nongeneric theft crime, for relatively few jurisdictions … have expressly rejected" this doctrine. *Id.* at 821. Moreover, here, as in *Duenas–Alvarez,* the defendant has failed to "show something *special* about California's version of the doctrine—for example, that California in applying it criminalizes conduct that most other States would not consider" a felony under the Controlled Substances Act, because he has not "point[ed] to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* at 821–22 (emphasis in original). Reveles–Espinoza has not demonstrated "a realistic probability, not a theoretical possibility, that [California] would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 822. We thus conclude that California's aiding and abetting liability is not sufficiently broader than that under federal law such that it places a conviction under § 11358 outside the ambit of felonies punishable under the Controlled Substances Act. Even if Reveles–Espinoza was convicted under a theory of aiding and abetting, he is liable under federal as well as state law.

### II. *Notice of Basis of Deportation*

■ The fact that the Notice to Appear (NTA) served upon Reveles–Espinoza characterized his § 11358 conviction as a "controlled substance offense" rather than an "aggravated felony" was not a due process violation. *Cf. United States v. Gonzalez–Valerio,* 342 F.3d 1051, 1055–56 (9th Cir.2003) (holding that even an aggravated felony entirely unmentioned in the NTA could serve as a bar to relief from removal). Even if Reveles–Espinoza was initial-

ly unaware that a conviction under § 11358—which the NTA specified was a violation of the Controlled Substances Act—carried with it the potential to deprive him of eligibility for cancellation of removal, the IJ provided notice by twice delaying the hearing in order to allow the government time to obtain prior conviction records so that she could determine Reveles–Espinoza's eligibility for relief, specifically flagging the issue of whether the § 11358 conviction was an "aggravated felony." Thus, Reveles–Espinoza received constitutionally sufficient notice that he was subject to removal proceedings in which he might be ineligible for cancellation of removal.

**AFFIRMED.**